UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

CORTEZ D. SHISLER,

        Plaintiff,

v.

UNKNOWN GOLLADAY et al.,

        Defendants.
_____/

Case No. 2:19-cv-80

Honorable Gordon J. Quist

# **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Golladay, Stenback, Jones, and Rink. The Court will also dismiss, for failure to state a claim, Plaintiff's claims against Defendant Burke, with the exception of Plaintiff's claim against Defendant Burke for violating Plaintiff's free exercise rights when Burke removed Plaintiff from the Ramadan list.

**Discussion**

I.      **Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Chippewa Correctional Facility (URF) in Kincheloe, Michigan.  The events about which he complains occurred at that facility.  Plaintiff sues URF Correctional Officers Unknown Golladay and Unknown Stenback, URF Sergeant M. Jones, URF Captain Unknown Burke, and URF Chaplain David Rink.

Plaintiff alleges that he is a Muslim and that, in observance of his Islamic faith, he participated in a fast during the Holy Month of Ramadan.[1]  On June 7, 2018, Plaintiff was preparing food to break his fast.  Defendant Golladay reported that Plaintiff was preparing noodles in a microwave using a popcorn bag and no water.  Defendant Golladay claimed the noodles were burning and the smoke set off the smoke detector.  Plaintiff claims that steam activated the smoke detector and that his food was not burnt.  Nonetheless, Golladay directed Plaintiff to dump the food.  Plaintiff refused.  Golladay dumped the food outside and then wrote a Class II Misconduct report against Plaintiff for misusing property: "The act of burning noodles in an old pop corn bag with out water is clearly misuse of property."  (Misconduct Report, ECF No. 1-1, PageID.11.)

Shortly after the incident, Plaintiff saw the deputy warden and the residential unit manager (RUM).  Plaintiff complained about Golladay's disposal of Plaintiff's food.  The deputy warden and RUM indicated they would speak with staff about the issue.

---

[1] "'Observant Muslims fast between dawn and sunset during the thirty days of Ramadan.'" *Heard v. Finco*. No. 1:13-cv-373, 2014 WL 2920479, at *1 (W.D. Mich. June 27, 2014).  "They may resume eating and drinking after sunset until dawn the following day." *Id*.  That schedule is a significant departure from the MDOC norm, but MDOC policy directives specify that prisoners may abstain from any foods that violate their religious tenets, MDOC Policy Directive 04.07.100 ¶ D, and that prisoners may participate in Ramadan fasts, MDOC Policy Directive 05.03.150 ¶ J.  Although prisoners participate in the fasts, the MDOC must still satisfy their nutritional and caloric requirements.  MDOC Policy Directive 04.07.100 ¶ H.

2

Later that day, Plaintiff encountered Golladay in the yard. Golladay stated: "All this over some burnt food? The ticket will be the le[a]st of your worries." (Compl., ECF No. 1, PageID.3.) Plaintiff felt threatened and intimidated.

The next day, Defendant Stenback issued a notice of intent to conduct an administrative hearing. (Notice, ECF No. 1-1, PageID.12.) Stenback proposed removing Plaintiff from the authorized Ramadan participant list because of the noodle incident. (*Id.*) Stenback reported that Plaintiff did not have authorization to prepare food while he was observing Ramadan. (*Id.*)

Defendant Jones reviewed the notice with Plaintiff. Jones offered Plaintiff the opportunity to sign off on the notice or to have a hearing. Jones indicated that if Plaintiff opted for the hearing, he would have his "cell tossed." (Compl., ECF No. 1, PageID.4.) Plaintiff demanded a hearing, but Jones never "tossed" Plaintiff's cell.

Defendant Burke conducted the hearing. Plaintiff argued that food preparation did not violate the fast. Burke removed Plaintiff from the Ramadan list despite Plaintiff's argument. He instructed Plaintiff to go to regular meal lines thereafter.

On June 10, two days after the hearing, Plaintiff filed a grievance against Golladay, Stenback, Jones and Burke. (Grievance, ECF No. 1-1, PageID.14-17.) RUM LaCrosse responded to the grievance at the first step and deputy warden Batho reviewed the response. The grievance response indicates that after Plaintiff was removed from the Ramadan list, Defendant Rink contacted Central Facilities Administration for clarification regarding the Ramadan "rules." Rink learned that preparing food does not violate the Ramadan fast. Absent a violation, there was no reason to remove Plaintiff from the Ramadan list. LaCrosse and Batho ordered Plaintiff's return to the Ramadan list.

By the time Plaintiff was returned to the Ramadan list, Ramadan had been over for two weeks. Plaintiff indicates that he went without "provided meals from the State for 9 days[.]" (Compl., ECF No. 1, PageID.5.) He does not allege that he went without food. Nonetheless, Plaintiff claims he experienced weight loss, skin discoloration, body aches, lack of strength, hair loss, hunger pains, shutting down of internal organs, and an inability to defecate. Plaintiff seeks $100,000.00 in compensatory and punitive damages.

## II. Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the

*Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). Plaintiff's alleges that Defendants have interfered with his First Amendment right to freely exercise his religion, Plaintiff alleges retaliation in violation of the First Amendment, and Plaintiff claims that Defendants' actions violated his rights under the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc-1(a).

### III. RLUIPA

RLUIPA provides that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to [a prison] . . . unless the government demonstrates that imposition of the burden on that person: (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1(a); *see also Haight v. Thompson*, 763 F.3d 554, 559-60 (6th Cir. 2014).

RLUIPA does not permit money damages against state prison officials, whether they are sued in their official capacities, *Sossamon v. Texas*, 563 U.S. 277 (2011), or in their individual capacities, *Haight*, 763 F.3d at 567-70. Plaintiff has already been reinstated to the

5

Ramadan list. He seeks no relief other than damages. Accordingly, he has failed to state a viable claim for relief under RLUIPA.

### IV. Retaliation

Plaintiff uses the term retaliation to describe Stenback's issuance of the notice of intent. The term might also be applied to either Defendant Golladay's threat—"the ticket will be the least of your worries"—in response to Plaintiff's complaint to the deputy warden and RUM, or Defendant Jones' threat—to toss Plaintiff's cell—in response to Plaintiff's anticipated insistence on a hearing. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

#### A. Protected Conduct

Plaintiff alleges that Defendant Stenback retaliated against Plaintiff by issuing the Notice of Intent to Conduct an Administrative Hearing. The only event Plaintiff alleges that prompted that response was Plaintiff's preparation of food. Certainly, Plaintiff's exercise of his religion would be protected conduct; however, Plaintiff's preparation of food was not an exercise of his religion. Using a microwave to cook noodles in a popcorn bag is not conduct protected by

6

the constitution. Accordingly, Plaintiff has failed to state a First Amendment retaliation claim against Defendant Stenback.

Plaintiff's complaint about Defendant Golladay to the deputy warden and the RUM is protected conduct. An inmate has a right to file "non-frivolous" grievances against prison officials on his own behalf, whether written or oral. *Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018); *Mack v. Warden Loretto FCI*, 839 F.3d 286, 299 (3d Cir. 2016) ("[The prisoner's] oral grievance to [the prison officer] regarding the anti-Muslim harassment he endured at work constitutes protected activity under the First Amendment."); *Pearson v. Welborn*, 471 F.3d 732, 741 (7th Cir. 2006) ("[W]e decline to hold that legitimate complaints lose their protected status simply because they are spoken."); *see also Pasley v. Conerly*, 345 F. App'x 981, 985 (6th Cir. 2009) (finding that a prisoner engaged in protected conduct by *threatening* to file a grievance). "Nothing in the First Amendment itself suggests that the right to petition for redress of grievances only attaches when the petitioning takes a specific form." *Holzemer v. City of Memphis*, 621 F.3d 512, 521 (6th Cir. 2010) (finding that a conversation constituted protected petitioning activity) (quoting *Pearson*, 471 F.3d at 741).

At this stage of the proceedings, Plaintiff's refusal to sign off on the notice of intent and insistence on a hearing also appear to be protected conduct. "[T]he right of freedom of thought protected by the First Amendment against state action includes both the right to speak freely and the right to refrain from speaking at all." *Wooley v. Maynard*, 430 U.S. 705, 714 (1977). In the context of prison, of course, the right to speak or not speak is necessarily constrained. The Supreme Court "has repeatedly recognized the need for major restrictions on a prisoner's rights." *Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 129 (1977). Thus, an inmate "retains [only] those First Amendment rights that are not inconsistent with his status as a prisoner or with

the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974).

The Second Circuit Court of Appeals, in *Burns v. Martuscello*, 890 F.3d 77 (2d Cir. 2018), recently considered whether declining to speak could be protected conduct for a prisoner. The *Burns* panel concluded that refusing to provide false information and refusing to serve as a snitch on an ongoing basis were not inconsistent with the plaintiff's status as a prisoner and, accordingly, were protected by the First Amendment. *Id*. at 88-93; *but see Dixon v. Gonzales*, No. 1:09-cv-172, 2009 WL 3416005, at *3 n.1 (E.D. Cal. Oct. 21, 2009) ("To the extent Plaintiff is attempting to state a claim for retaliation based upon a right to not speak (i.e., not to 'snitch'), that claim also fails."). Here, where the MDOC provides the prisoner the opportunity to sign off on a notice of intent or, alternatively, to insist on a hearing, it would seem anomalous to say that a prisoner's choice would be "inconsistent with his status as a prisoner." Therefore, the Court concludes Plaintiff's response to Defendant Jones was protected conduct.

**B.     Adverse Action**

The adverseness inquiry is an objective one and does not depend on how a particular plaintiff reacted. The relevant question is whether the defendants' conduct is "*capable of deterring a person of ordinary firmness*"; the plaintiff need not show actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002) (emphasis in original). Thus, a specific threat of harm may satisfy the adverse-action requirement if it would deter a person of ordinary firmness from exercising his or her First Amendment rights, *see, e.g., Thaddeus-X*, 175 F.3d at 396, 398 (threat of physical harm); *Smith v. Yarrow*, 78 F. App'x 529, 542 (6th Cir. 2003) (threat to change drug test results). However, "'prisoners are expected to endure more than the average citizen,' and so not every objectionable act directed at a prisoner constitutes adverse action sufficient to deter . . . ."

8

*Reynolds-Bey v. Harris*, 428 F. App'x 493, 503 (6th Cir. 2011) (quoting *Siggers-El v. Barlow*, 412 F.3d 693, 701 (6th Cir. 2005)). Certain threats or deprivations are so *de minimis* that they do not rise to the level of being constitutional violations. *Thaddeus-X*, 175 F.3d at 398; *Smith*, 78 F. App'x at 542.

Neither the threat made by Defendant Golladay nor the threat made by Defendant Jones rises to the level of an adverse action. With respect to Jones, "the single search of a prison cubicle would not deter a person of 'ordinary firmness' from pursuing constitutional grievances." *Tate v. Campbell*, 85 F. App'x 413, 417 (6th Cir. 2003); *see also Reynolds-Bey*, 428 F. App'x at 503-04. With respect to Golladay, the threat is simply too vague. *See, e.g., Hardy v. Adams*, No. 16-2055, 2018 WL 3559190, at *3 (6th Cir. Apr. 13, 2018) ("The alleged threat by Adams that she would make Hardy's life 'hell' is simply too vague to pass this threshold."); *Dahlstrom v. Butler*, No. 2:18-cv-101, 2019 WL 91999, at *11 (W.D. Mich. Jan. 3, 2019) ("Krause's threat[--to 'get' a prisoner who files a grievance on Krause and 'steps out of line'--] is too vague and non-specific to deter a person of ordinary firmness from engaging in protected conduct."); *Yates v. Rogers*, No. 2:18-cv-180, 2018 WL 6629366, at *7 (W.D. Mich. Dec. 19, 2018) ("Defendant's vague threat to 'get' Plaintiff does not carry the same seriousness . . . ."); *Johnson v. Govern*, No. 2:17-cv-125, 2018 WL 6321548, at *2 (W.D. Mich. Dec. 4, 2018) ("Govern's alleged threat to 'put a case' on Johnson . . . was too vague to constitute adverse action."); *Hunter v. Palmer*, No. 1:17-cv-109, 2017 WL 1276762, at *11 (W.D. Mich. Apr. 6, 2017) ("Defendant DeMaeyer told Plaintiff that complaining would get him into a lot of trouble . . . [s]uch a vague threat of unspecified harm falls short of adverse action."). Accordingly, Plaintiff has failed to state a retaliation claim against either Jones or Golladay.

## V. First Amendment-Free Exercise

Plaintiff alleges that his First Amendment rights to freely exercise his religion were violated because he was unjustifiably excluded from participation in Ramadan. While "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights," inmates clearly retain the First Amendment protection to freely exercise their religion. *See O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987) (citations omitted). To establish that this right has been violated, Plaintiff must establish that: (1) the belief or practice he seeks to protect is religious within his own "scheme of things," (2) that his belief is sincerely held, and (3) Defendant's behavior infringes upon this practice or belief. *Kent v. Johnson*, 821 F.2d 1220, 1224-25 (6th Cir. 1987); *see also Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001) (same); *Bakr v. Johnson*, No. 95-2348,1997 WL 428903, at *2 (6th Cir. July 30, 1997) (noting that "sincerely held religious beliefs require accommodation by prison officials").

Participation in Ramadan is most certainly a religious practice. Plaintiff alleges that his belief is sincerely held. Moreover, there can be little question that removing Plaintiff from the Ramadan list, and thereby presenting him with the choice of eating in the regular meal line and violating the fast or not eating at all, infringed upon Plaintiff's practice of his religion. *See, e.g., Welch v. Spaulding*, 627 F. App'x 479, 483 n.2 (6th Cir. 2015) ("A temptation to break the Ramadan fast due to hunger and discomfort . . . may substantially burden an inmate's right to free exercise of religion."). Therefore, to the extent Defendants removed Plaintiff from the Ramadan list, Plaintiff has stated a claim against them.

But, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Defendants Golladay, Stenback, and Jones did not remove Plaintiff from the Ramadan list. They

played some role in raising the question whether Plaintiff was violating Ramadan, but only Defendant Burke concluded that Plaintiff had violated Ramadan and removed Plaintiff from the list. Indeed, Plaintiff complains that Defendant Burke effected the removal when it should have been Defendant Rink's responsibility.

With respect to Defendant Rink, Plaintiff alleges only that Rink did not fix the problem caused by Burke. That allegation is not sufficient to state a claim against Defendant Rink. A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, Defendant Rink did not fail to act. It was Rink who presented the issue to Lansing and secured the determination that Plaintiff's preparation of food did not, by itself, violate Ramadan. Thus, Defendant Rink ultimately did "fix this issue" even though Plaintiff contends he did not. (Compl., ECF No. 1, PageID.5.)

Plaintiff's free exercise claim against Defendant Burke may go forward; however, Plaintiff has failed to state such a claim against the other Defendants.

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Golladay, Stenback, Jones, and Rink will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Moreover, the Court will dismiss for failure to state a claim Plaintiff's claims against Defendant Burke, except Plaintiff's claim against Defendant Burke for violating Plaintff's free exercise rights when Burke removed Plaintiff from the Ramadan list.

An order consistent with this opinion will be entered.


Dated: June 25, 2019 /s/ Gordon J. Quist
GORDON J. QUIST
UNITED STATES DISTRICT JUDGE